FILED
2006 May-24 AM 09:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 5:04-CR-206-RDP-RRA |
| | } | |
| **KEVIN SEAN POLK,** | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

Pending before the court are the following motions: Defendant's Motion to Set Competency Hearing (Doc. #31) filed February 6, 2006, and Amended Motion to Set Competency Hearing (Doc. #33) filed March 1, 2006. The court has before it three issues: (1) whether Defendant is competent to stand trial; (2) if Defendant is incompetent, whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and (3) if Defendant is incompetent and not restorable to competency, whether the court must simply release him or consider civil commitment proceedings under 18 U.S.C. § 4246.

As outlined below, although the court determines that Defendant Kevin Sean Polk is not competent to stand trial in an unmedicated state, the court will not order that Defendant be forcibly medicated. Therefore, there is no longer a substantial probability that in the foreseeable future Defendant will attain the capacity to permit the trial to proceed. Accordingly, Defendant is now subject to the possibility of civil commitment under 18 U.S.C. § 4246 if he "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." Before conducting a formal § 4246 evaluation of dangerousness, however, the court will return Defendant to the custody

of FMC-Butner for a period of 30 days wherein the facility director shall determine whether to file a dangerousness certificate. If no certificate is filed, Defendant shall be returned to the custody of this court for release. If a certificate is filed, a court of competent jurisdiction must conduct further proceedings consistent with the requirements of § 4246. Below follows an analysis of the court's reasoning for its findings.

**I.      Procedural History**

On May 12, 2004, the court granted a petition filed by the Government to have Kevin Sean Polk ("Defendant") undergo a forensic psychological evaluation to determine his competency as Defendant has a history of mental illness. (*See* Docket Sheet Entry May 12, 2004, Order by Mag-Judge Harwell G. Davis III). Defendant was subsequently transferred to FMC-Butner where he was assessed to indeed have Delusional Disorder but deemed competent to proceed in prosecution. (Docs. # 11-12, 18). On December 27, 2004, the warden of FMC-Butner filed with this court a Certificate of Restoration of Competency to Stand Trial. (Doc. # 18).

After his return to this district, Defendant continued to exhibit bizarre and erratic behavior. Accordingly, defense counsel requested a continuance of the December 29, 2004 competency hearing so that a local forensic evaluation could be conducted. (*See* Docket Sheet Entry December 29, 2004, Minute Entry for proceedings held before Judge Harwell G Davis III). Defendant then was evaluated by Dr. Marianne Rosenzweig, a forensic psychologist, who concurred with the previous assessment of Delusional Disorder, but questioned whether Defendant could substantially assist his attorney in his defense given the persecutorial nature of his delusional belief system and his refusal to take psychotropic medication. (*See* Docs. # 26, 27). Consequently, on May 11, 2005, the Government filed a motion with the court requesting that Defendant be remanded to FMC-Butner

for further psychological testing to include a re-evaluation of his competency to stand trial, his sanity at the time of the offense, and the risk Defendant may pose regarding future dangerousness. (Doc. # 26).

On May 19, 2005, Judge Davis granted the motion and ordered "pursuant to 18 U.S.C. § 4241 and § 4242, that Defendant be committed to the custody of the Attorney General for hospitalization in a suitable facility for a reasonable period of time not to exceed four (4) months for treatment to restore Defendant to a state of mental competency so that the criminal proceedings against him may proceed." (Doc.# 27, at 2). Judge Davis further directed that if "the director of the facility in which this defendant is hospitalized determines that he has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the director shall promptly file a certificate to that effect with the Clerk of his Court. . . . If, however, it is determined that the defendant has not been made competent within the said four months, the treatment facility shall state whether there is a substantial probability that in the foreseeable future the defendant would obtain the capacity to permit the trial to proceed." (Doc.# 27, at 2-3).

On October 28, 2005, Defendant again was returned to this district. His evaluators at FMC-Butner concluded that he was not competent and that he was not able to appreciate the nature and quality of his actions. (Doc. # 30). Furthermore, the professionals at FMC-Butner concluded that psychotropic medications would be needed to restore him to competency. (Doc. # 30).

The Government and Defendant have jointly stipulated to the following:

(a)  Defendant is not competent to stand trial, based upon the findings of Dr. Bryon Herbel, M.D., FMC-Butner staff psychiatrist, Dr. Robert Cochrane, Psy.D., FMC-Butner staff psychologist, and the findings of Dr. Marianne

3

        Rosenzweig, Ph.D;

(b)    Defendant can only be made competent to stand trial by taking psychotropic medications;

(c)    Defendant is unwilling to take psychotropic medications; and

(d)    The Government cannot show a sufficiently important governmental interest is at stake so as to require Defendant to take psychotropic medications.

(Doc. # 35).

## II.    Competency to Stand Trial Pursuant to § 4241

The United States Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (citations omitted). "'Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.'" *Cooper*, 517 U.S. at 354 (citation omitted). "The test for competence is also well-settled." *Cooper*, 517 U.S. at 354. "A defendant may not be put to trial unless [he] has sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding ⋯ [and] a rational as well as factual understanding of the proceedings against [him]." *Cooper*, 517 U.S. at 354. (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)(internal quotation marks omitted)).

The federal competency standard is codified at 18 U.S.C. § 4241. This statute provides that "if, after a hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist

properly in his defense, the court shall commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d). On March 1, 2006, Defendant filed an amended motion for an order of competency from this court (Doc. # 33), and the court held a § 4241(e) competency hearing on March 29, 2006.

At the hearing, evidence was presented regarding the most recent evaluation conducted by physicians at FMC-Butner. (Doc. # 30). The report concluded that Defendant was not competent, was not able to appreciate the nature and quality of his actions, and would need psychotropic medications to restore him to competency. (Doc. # 30). Specifically, the physicians at FMC-Butner found that Defendant suffers from a mental disease or defect – Delusional Disorder, Persecutory Type – that is characterized by delusional beliefs that he is being conspired against, cheated, spied on, followed, or obstructed, and includes thoughts that are both grandiose (*i.e.,* he thinks he has special knowledge of terrorist activities) and paranoid (*i.e.,* believes he is a victim of government plots). (Doc. # 30). At the hearing, the parties stipulated to Defendant's incompetence and the need for medication to restore competency, as outlined by the FMC-Butner report.

The parties have also stipulated that forced medication to restore Defendant to competency for trial is not warranted here. The court agrees. Although the court may order involuntary medication of a mentally ill prison detainee in order to render the detainee competent for trial, the Supreme Court has held that the Constitution permits forced medication only when the Government can establish that: (1) "*important* governmental interests are at stake;" (2) "involuntary medication will significantly further those concomitant state interests" in that "administration of the drugs is substantially likely to render the defendant competent to stand trial" and the "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the

defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair;" (3) "involuntary medication is necessary to further those interests;" and (4) "administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition." *See Sell v. United States*, 539 U.S. 166, 180-81 (2003)(emphasis added). The Government agrees that it lacks a sufficiently important governmental interest in this case to require Defendant to be involuntarily administered antipsychotic drugs, and therefore it is not constitutionally permissible to order forcible medication of Defendant. Defendant has stated that he will not voluntarily take the medication required to restore him to competency. (Doc. # 35).

Accordingly, this court concludes, based upon the parties' stipulations and the record evidence before it, that a preponderance of the evidence establishes that the Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense pursuant to 18 U.S.C. § 4241. After the court arrives at this conclusion, it has no discretion as to its course of action. It is "required 'to commit the defendant to the custody of the Attorney General.'" *United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir.1990); *see also United States v. Shawar*, 865 F.2d 856, 860 (7th Cir.1989). "[O]nce a defendant is found incompetent, the Government is entitled to an in-depth evaluation of him, in order to determine whether he is likely to recover." *Shawar*, 865 F.2d at 861.

In this case, however, Defendant already has been in the custody of the Attorney General for an evaluation to be conducted in accordance with § 4241(d) to determine whether "there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit

the trial to proceed." 18 U.S.C. § 4241(d).[1]  The FMC-Butner report clearly concluded that medication is required to restore Defendant to competency, and the parties have stipulated that medication cannot and will not be administered in this case either forcibly or voluntarily. At this point, additional evaluation under § 4241(d) would be redundant. By stipulation of the parties, it has been clearly established that there is a substantial probability that Defendant will not obtain the capacity to permit the trial to proceed in the foreseeable future.

Therefore, because "[D]efendant's mental condition has not so improved as to permit the trial to proceed," Defendant is now "subject to the provisions of section 4246." 18 U.S.C. § 4241(d).

### III.    Dangerousness Pursuant to § 4246

Given the court's incompetency findings, the relevant question becomes whether the court

---

[1] Section 4241(d) provides that, if a defendant is determined to be incompetent, the court shall commit the defendant to the custody of the Attorney General for a reasonable period of time, not to exceed four months, in order to determine whether "there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the trial to proceed," 18 U.S.C. § 4241(d)(1), and for an additional reasonable period of time until "his mental condition is so improved that the trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed," 18 U.S.C. § 4241(d)(2).  On May 19, 2005, Judge Davis ordered "pursuant to 18 U.S.C. § 4241 and § 4242, that Defendant be committed to the custody of the Attorney General for hospitalization in a suitable facility for a reasonable period of time not to exceed four (4) months for treatment to restore Defendant to a state of mental competency so that the criminal proceedings against him may proceed." (Doc.# 27, at 2).  Judge Davis further directed that if "the director of the facility in which this defendant is hospitalized determines that he has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the director shall promptly file a certificate to that effect with the Clerk of his Court. . . . If, however, it is determined that the defendant has not been made competent within the said four months, the treatment facility shall state whether there is a substantial probability that in the foreseeable future the defendant would obtain the capacity to permit the trial to proceed." (Doc.# 27, at 2-3). In accordance with that order, FMC-Butner evaluated Defendant and determined that, *if medicated*, there is a substantial probability that in the foreseeable future the defendant would obtain the capacity to permit the trial to proceed.

must simply release Defendant, or whether he is subject to civil commitment proceedings under 18 U.S.C. § 4246. Section 4246 sets forth a detailed procedure for handling federal pretrial detainees who are determined to be both incompetent to stand trial and a danger to other persons or property if released. The first step of the procedure is that there must be a certificate that the pretrial detainee "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another . . . ." 18 U.S.C. § 4246(a). This certificate is to be made by "the director of a facility in which a person is hospitalized another . . . ."18 U.S.C. § 4246(a). The court must then hold a hearing. *See* 18 U.S.C. § 4246(c). "If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4246(d).

It is clear from the structure of § 4246(a) that the court cannot hold a hearing to determine whether in fact the individual is dangerous unless the facility director files the requisite certificate. In this case, FMC-Butner has not filed a certificate of dangerousness with regard to Defendant, and rightly so. A dangerousness certificate need not – and perhaps cannot – be filed until the court determines pursuant to § 4241(d), as it did for the first time earlier in this opinion, that there is no substantial probability that further treatment will render the defendant competent. Although the report from FMC-Butner did include some preliminary impressions of dangerousness as part of the competency evaluation, the report makes clear that a formal evaluation of Defendant's dangerousness – much less a determination of whether his condition warrants the requisite certificate – was not completed:

8

> "After reviewing the case, the [Risk Panel] members noted that Mr. Polk had the pattern of writing threatening letters to gain attention of the authorities but had not acted on them. If he remained delusional, he would likely continue to engage in the same behavior. The main issue regarding the risk of dangerousness was whether this pattern would escalate to the point that Mr. Polk would start carrying out his threats. . . .The members of the Risk Panel **ultimately did not render a formal opinion on dangerousness**, since Mr. Polk had not yet met the legal criteria for consideration for commitment under § 4246 by a judicial finding of being incompetent to stand trial and not being restorable to competency. The members of the Risk Panel did provide feedback to Mr. Polk's evaluating psychiatrist on this matter."

(Doc. # 30, at 7-8) (emphasis added). Given the court's evaluation of competency herein, Defendant now has met the legal criteria for consideration of commitment under § 4246.

Thus, it appears that the appropriate procedure is to order the FMC-Butner facility director to formally consider whether a certificate of substantial risk of dangerousness is appropriate in this case. FMC-Butner's preliminary thoughts on dangerousness certainly warrant further evaluation of whether Defendant's diagnosed mental disease would create a substantial risk of bodily injury to another person or serious damage to property of another if he were released. The attendant physicians noted that it "may be subject to dispute" whether the action of writing threatening letters is sufficient for dangerousness because it is unclear whether Defendant would start carrying out his threats in the foreseeable future by harming others or damaging their property. (Doc. # 30, Page12). Although one study suggested that Defendant has a "low" risk for future violent behavior, another analysis set the risk for future violence at "moderate" (Doc. # 30, Page 20), and the physicians noted the absence of any "well-established database to confidently provide a measure of Mr. Polk's risk of actually carrying out this threats to harm others or the property of others." (Doc. # 30, Page 20).[2]

---

[2] Although Defendant's past history does not reveal recently committed dangerous acts, at least one Circuit has found that delusions and threats alone are enough to prove dangerousness even though a defendant never had the opportunity to act on them. *United States v. Steil*, 916 F.2d 485, 487-88 (8th Cir.1990). Overt acts of violence are not necessary to a finding of substantial risk.

Given those comments, the court concludes that, if given the opportunity, there is some possibility that FMC-Butner might certify Defendant as dangerous within the meaning of § 4246. Thus, the court finds it appropriate to transfer Defendant back to the custody of FMC-Butner for a short period of time to allow the facility director to determine whether a dangerousness certificate is warranted in this case.[3]

## IV.   Conclusion

For the reasons set forth above, the court concludes that Defendant Kevin Sean Polk suffers from a mental defect that renders him incompetent to stand trial. While there is some possibility that Defendant could be rendered competent by the involuntary administration of antipsychotic drugs, the Government has conceded that involuntary medication is not appropriate in this case under the

---

*United States v. Williams*, 299 F.3d 673 (8th Cir. 2002); *United States v. Khatib*, 17 Fed. Appx. 486 (8th Cir. 2001) (finding a report reasonable that concluded that "grandiose, unrealistic thinking" posed a risk of dangerous behavior). Another Circuit has opined that a finding of "substantial risk" under this section may be based on any activity that evinces a genuine possibility of future harm to persons or property. *U.S. v. Sahhar*, 917 F.2d 1197 (9th Cir. 1990).

[3] Although the court has contemplated the question of whether the dangerousness certificate can be made given that Defendant is not currently physically confined at FMC-Butner, the court has been unable to find any authority that suggests that Congress intended to preclude a treatment facility that previously treated a defendant from certifying him as dangerous where such a certificate is warranted by the facts and where the treatment facility discharged the defendant without the court order contemplated by § 4241(e). Underlying §§ 4241-4248 "is the concept of some protection to society as well as the preservation of the rights of an accused person." *United States v. Barnes*, 175 F.Supp. 60, 65 (S.D.Cal.1959); *see also United States v. Sahhar*, 56 F.3d 1026 (9th Cir.1995) (noting that § 4246 implicates "important federal concerns of protecting society from dangerous criminal defendants and controlling and treating dangerous persons within the federal criminal justice system who are incompetent to stand trial."). It would undermine that concept to allow the release of Defendant into society without a dangerousness determination being made as contemplated by the statute simply because defendant was transported back to this district court prior to the court making a competency determination. The court concludes that there is no legal basis here for precluding FMC-Butner from now certifying defendant as dangerous pursuant to § 4246, should it believe that such a certificate is warranted.

*Sell* test, and the court agrees. Accordingly, the court cannot, consistent with the Constitution, order the forcible administration of such drugs on Defendant. Thus, Defendant is "subject to the provisions of section 4246." 18 U.S.C. § 4241(d). Pursuant to § 4246(a), the facility director may file a certificate of dangerousness if it is determined that Defendant is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available. 18 U.S.C.A. § 4246(a). The court concludes that it consistent with the statutory scheme and common sense to return Defendant to the care and custody of FMC-Butner for a period of 30 days in which the director shall make a determination whether to file a dangerousness certificate. If no certificate is filed, Defendant shall be returned to the custody of this court for release. A separate order will be entered.

**DONE** and **ORDERED** this \_\_\_24th\_\_\_ day of May, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE